UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH LEARY,
    Plaintiff,

v.

ROY MANSTAN, FREDERIC FRESE,
WESTHOLME PUBLISHING, LLC,
    Defendants.

FREDERIC FRESE, ROY MANSTAN,
    Counter Claimants,

v.

JOSEPH LEARY,
    Counter Defendant.

No. 3:13-cv-00639 (JAM)

**ORDER RE PENDING MOTIONS**

It is perhaps not surprising that the world's first submarine was designed and built here in Connecticut, given this state's rich maritime history and longtime association with the building of boats and submarines. What is surprising, though, is that the first submarine was created well over 200 years ago, during the Revolutionary War, by a farmer from Connecticut named David Bushnell. Bushnell built a one-man submersible vessel, known as the Turtle, to conduct covert underwater attacks on the British naval fleet docked on American shores. The Turtle's missions were never really successful, but the Turtle itself was a remarkable creation—a fully operational wooden submarine that was praised by the likes of George Washington and Benjamin Franklin.

The curious history of David Bushnell and the Turtle submarine has long fascinated

plaintiff Joseph Leary, and in the 1970s plaintiff worked with defendant Frederic Frese to build a replica of the Revolutionary-era submarine. Plaintiff also spent decades writing an (as–yet–unpublished) manuscript weaving together a biography of Bushnell, historical information about the Turtle, and plaintiff's own experience building a replica of the Turtle.

Approximately 30 years later, in the first decade of this century, defendants Frederic Frese and Roy Manstan worked together to build another replica of the Turtle. Frese and Manstan then wrote a book about Bushnell, the Turtle submarine, and their own experiences building a replica of the Turtle. Their book—titled *Turtle: David Bushnell's Revolutionary Vessel*—was published by co-defendant Westholme Publishing, LLC, in 2010. Plaintiff initiated this copyright infringement case after reading defendants' book.

In his complaint, plaintiff contends that defendants' book infringes on his copyright in the unpublished manuscript and he also claims that defendants' conduct violates the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.* In turn, defendants Manstan and Frese have filed a two-count counterclaim against plaintiff, seeking a declaration of non-infringement and claiming that plaintiff's conduct in connection with this case violates CUTPA. Over the course of this ongoing litigation, the parties have filed numerous motions. This ruling addresses only those motions that were the subject of oral argument at the motion hearing that I held on January 20, 2015.

For the reasons set forth below, I deny defendants' motion for plaintiff to post a $400,000 bond. I also deny plaintiff's motion for leave to file an amended complaint to bring an additional copyright infringement claim related to a photograph in defendants' book; the motion is manifestly untimely and unsupported by good cause for its late filing. Relatedly, because I deny the motion to file an amended complaint, I deny as moot plaintiff's motion for summary

judgment on this new copyright infringement claim. Finally, I treat plaintiff's motion for summary judgment on defendants' CUTPA counterclaim as a motion to dismiss, and I grant that motion on the ground that the claim has been asserted prematurely. Each of these motions is discussed in turn below.

### *Defendants' Motion to Post Bond (Doc. #27)*

Defendants Manstan and Frese move for an order requiring plaintiff "to post a bond in the amount of $400,000.00 as security for the costs associated with this litigation pursuant to Local Rule 83.3(a)." Doc. #27 at 1. Under the Federal Rules of Civil Procedure, a "prevailing party" is generally entitled to recoup costs (other than attorneys' fees) that it incurred in connection with the litigation. Fed. R. Civ. P. 54(d)(1); *see also Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013) ("Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs."). But, as a practical matter, a prevailing defendant who has been sued by an impecunious plaintiff may not be able to collect its costs, especially if the plaintiff's assets have dwindled since the onset of the proceedings. Accordingly, many district courts have imposed bond requirements "to insure that whatever assets a party does possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999) (emphasis omitted).

In the District of Connecticut, the bond requirement is found in Local Rule 83.3(a). That provision entitles a defendant "to an order to be entered by the Clerk, as of course, for a cash deposit or bond with recognized corporate surety in the sum of $500.00 as security for costs to be given within thirty days from the entry of such order." D. Conn. L. Civ. R. 83.3(a). The Court may award "[a]dditional, substituted, or reduced security . . . at any time during the pendency of the action for good cause found by the Court." *Ibid.* Elsewhere in the Local Rules, costs are

defined to include such items as fees of the clerk, marshal, court reporter, and witnesses, as well as fees for maps, charts, models, photographs, and other similar items. D. Conn. L. Civ. R. 54(c)(1)–(6). Attorneys' fees, however, generally "are not recoverable as costs, unless by order of the Court." D. Conn. L. Civ. R. 54(c)(7).

In this case, defendants contend that a $400,000 bond is warranted because they are likely to succeed on the merits and recover their costs and attorneys' fees, which will probably reach or exceed $400,000. I am not persuaded. First of all, the bond requirement is not a mechanism for conducting a preliminary assessment of the merits of a claim. *Cf. Selletti*, 173 F.3d at 112 ("[T]he imposition of a security requirement may not be used as a means to dismiss suits of questionable merit filed by plaintiffs with few resources."). Moreover, while a prevailing defendant in a copyright case might well be awarded attorneys' fees, *see* 17 U.S.C. § 505 (district court has discretion to "award a reasonable attorney's fee to the prevailing party as part of the costs"), any decision regarding whether to award such fees is premature at this juncture. And any decision regarding what amount of money might constitute reasonable attorneys' fees is equally premature.

In any event, even assuming that I agreed that defendants would be entitled to attorneys' fees in the realm of $400,000 if they prevail in this litigation, such fees are ordinarily not within the ambit of Local Rule 83.3. True, the Local Rules grant me discretion to require plaintiff to file security for attorneys' fees. But defendants have articulated no rationale for such an approach in this case, other than their own belief that plaintiff's claims are meritless. Defendants' motion to post a bond for $400,000 is denied.[1]

---

[1] This ruling is, of course, without prejudice to the right of any party or parties to seek reasonable attorneys' fees pursuant to the Copyright Act in the event that they ultimately prevail in this litigation.

*Plaintiff's Motions to Amend the Complaint (Doc. #33) and for Summary Judgment (Doc. #43)*

Plaintiff seeks leave to amend his complaint to assert an additional copyright infringement claim related to a photograph that appears on the first page of defendants' book. Defendants oppose the motion, and they argue that plaintiff has not demonstrated good cause for adding a new claim at this late stage in the litigation.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading should generally be granted "freely . . . where justice so requires." Fed. R. Civ. P. 15(a)(2). But this liberal standard does not remain in effect throughout the entire litigation. Fairly early on, the district court "must" issue a scheduling order pursuant to Rule 16 that "limit[s]," among other things, "the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(2), (3)(A). Rule 16(b) provides that modifications to deadlines set forth in the scheduling order are only permissible when the party seeking modification demonstrates "good cause." Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Under Second Circuit precedent, it is the "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), [that] governs a motion to amend filed after the deadline a district court has set for amending the pleadings." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

What constitutes good cause? The inquiry turns on whether the moving party displayed some degree of diligence in moving to amend his or her complaint. *See, e.g.*, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (noting that "the primary consideration is whether the moving party can demonstrate diligence"). "'A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y.

5

2014) (internal quotation marks omitted) (quoting *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)).

In this case, the scheduling order provided that any amended pleadings were due by July 1, 2013.[2] Plaintiff's motion to amend his complaint was filed nearly four months after this deadline, on October 29, 2013, just a few weeks before the close of discovery. Plaintiff contends that good cause exists here because he acted diligently in raising his new copyright infringement claim once he became "aware of the circumstances of how Defendants obtained the photograph at issue." Doc. #33 at 3. There is no merit to this argument.

The disputed photograph that is the subject of the proposed additional copyright claim features plaintiff himself standing next to the first Turtle replica as it was "christened" by former Connecticut Governor Ella T. Grasso. The photograph was allegedly taken by plaintiff's sister in 1977, and plaintiff claims that he owns the copyright to the photograph. At some point, plaintiff gave a copy of the photograph to the Connecticut River Museum, allegedly "for the limited purpose of displaying it in connection with an exhibit at the museum." Doc. #43-1 at 2. The museum then provided a copy of the photograph to defendants, and defendants featured the photograph on the very first page of their book. Defendants' published book credited the Connecticut River Museum as the source of the photograph. Plaintiff read defendants' book at least twice before initiating this litigation, *see* Doc. #35-1 at 4, and he was certainly on notice of the contents of the book and the citations and attributions contained therein.

Plaintiff claims, however, that he did not truly become aware of the manner by which defendants acquired this photograph until defendants produced certain documents in September 2013 in connection with this litigation. But the September 2013 document production consists of

---

[2] The Court's scheduling order (Doc. #25) approved the deadlines the parties proposed in their Rule 26(f) report (Doc. #23), including a deadline of July 1, 2013, for the filing of any amended pleadings.

6

nothing more than a few emails between defendant Manstan and two representatives of the Connecticut River Museum, and the emails simply confirm what was already clear from the very first page of defendants' book: that defendants obtained the photograph from the Connecticut River Museum and credited the photograph as coming from the museum's archives in their book. See Doc. #35-2 at 2–5. This information was not new to plaintiff in the fall of 2013. To the contrary, plaintiff's belated copyright infringement claim is based on facts known—or that should have been known—to plaintiff since well before the commencement of this suit.

Because plaintiff was not diligent in raising this new claim, the motion for leave to file an amended complaint is denied. And because I deny plaintiff's motion for leave to amend his complaint to assert the copyright infringement claim based on the photograph, I deny as moot plaintiff's corresponding motion for summary judgment on this proposed claim.

### *Plaintiff's Motion for Summary Judgment as to the CUTPA Counterclaim (Doc. #42)*

In count two of their counterclaim, defendants Manstan and Frese assert a CUTPA claim against plaintiff. See Doc. #19 at 9–18 (Defs.' Counterclaim). In their counterclaim, defendants allege that plaintiff "deceptively brought this lawsuit" based on "unsubstantiated claims of copyright infringement," and that this conduct violates CUTPA. Doc. #19 at 15. Plaintiff moves for summary judgment on defendants' CUTPA counterclaim on the ground that, as a matter of law, a CUTPA counterclaim cannot be premised on allegations that the pending lawsuit is vexatious or improper. Defendants oppose the motion.

As an initial matter, I find that a Rule 12(b)(6) motion to dismiss—and not a motion for summary judgment—is the appropriate vehicle for resolving the purely legal question presented by plaintiff's motion. Summary judgment is a mechanism designed to dispose of claims where the evidentiary record shows the existence of "no genuine dispute as to any material fact." Fed R.

Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). By contrast, a motion to dismiss looks to whether the complaint or counterclaim "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The role of a court reviewing a motion to dismiss is to determine the legal sufficiency of the claim—that is, whether the complaint or, in this case, the counterclaim sets forth a plausible basis for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

      Plaintiff's motion for summary judgment on defendants' CUTPA counterclaim is premised solely on the legal argument that CUTPA claims based on improper litigation conduct cannot be asserted as counterclaims in the litigation that is alleged to be improper. This argument is directed at the legal sufficiency of defendants' counterclaim, and not at the factual basis for the claim. *Cf. Yale Univ. v. S.K.M. Rests., Inc.*, 2013 WL 6916623, at *5–8 (Conn. Super. Ct. 2013) (where defendants asserted CUTPA counterclaim alleging that underlying litigation was "improper and was undertaken in bad faith for impermissible purposes" and plaintiff moved for summary judgment on counterclaim on ground that "obtaining judicial relief to enforce a legal right cannot, as a matter of law, violate or offend public policy so as to give rise to CUTPA liability," the court treated plaintiff's argument as a "challenge to the legal sufficiency of the [defendants'] counterclaim" notwithstanding the fact that the motion was styled as a request for summary judgment).

      Under these circumstances, I conclude that it is appropriate to assess the motion under a Rule 12(b)(6) standard. *See Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 250 (2d Cir. 1985) ("Although [the district court] relied on the affidavits submitted in support of the Rule 56 motion, and thus granted summary judgment, we believe it would have been equally proper to dismiss the civil rights count for failure to state a claim, pursuant to Rule 12(b)(6)."), *superseded*

*on other grounds by* Fed. R. Civ. P. 11; *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."); *Dolce v. Suffolk Cnty.*, 2014 WL 655371, at *3 (E.D.N.Y. 2014) (noting that defendant "styled its motion as one for summary judgment, but the Court may dismiss on the basis of the pleadings alone"); *Katz v. Molic*, 128 F.R.D. 35, 38 (S.D.N.Y. 1989) (noting that a court may convert a motion for summary judgment into a motion to dismiss with or without notice to parties). Having established that a motion to dismiss is the appropriate method for evaluating plaintiff's motion, I now must decide whether defendants' CUTPA counterclaim sets forth a plausible basis for relief.

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Conn Gen. Stat. § 42-110b(a), and it "provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice," *Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 351, 994 A.2d 153 (2010) (alteration in original) (internal quotation marks and citation omitted). Although it appears that no appellate court has addressed the issue, several judges of the Connecticut "Superior Court ha[ve] recognized that CUTPA claims can be predicated on allegations of vexatious litigation," *Am. Int'l Specialty Lines Co. v. HMT Inspections*, 2011 WL 1759098, at *10 (Conn. Super. Ct. 2011) (citing cases), or on allegations of "improper" or "bad faith" litigation, *S.K.M. Rests., Inc.*, 2013 WL 6916623, at *7. *See also Mangs v. Cowell*, 2010 WL 5573705, at *2 (Conn. Super. Ct. 2010) (noting that "some courts have held that a vexatious lawsuit or an abuse of process can constitute an unfair trade practice sufficient to state a CUTPA claim").

The problem here, however, is that the CUTPA claim is premised on allegations of vexatious litigation that are asserted as a counterclaim in the very litigation that is alleged to be vexatious. Under Connecticut law, a plaintiff asserting a statutory or common law vexatious litigation claim must allege that the underlying, allegedly vexatious lawsuit terminated in his or her favor. *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007); *see also* Sarah Gruber, *A Lawyer's Guide to Vexatious Litigation in Connecticut*, 88 Conn. B.J. __ (forthcoming 2015) (discussing the prior termination requirement and citing cases). Accordingly, "a counterclaim alleging vexatious litigation may not be brought in the same action as that which the defendant claims is vexatious." *Somers v. Chan*, 110 Conn. App. 511, 542, 955 A.2d 667 (2008) (citing *Equality, Inc. v. I–Link Commc'ns*, 76 F. Supp. 2d 227, 229 (D. Conn. 1999)); *see also Kaltman-Glasel v. Dooley*, 156 F. Supp. 2d 225, 227 (D. Conn. 2001) ("As a necessary element of defendants' counterclaim has not been and cannot be alleged unless and until the litigation terminates in defendants' favor, defendants' vexatious litigation counterclaim fails . . . .").

The vast majority of courts to consider the issue have held that the prior termination requirement for vexatious litigation cases also applies to CUTPA claims based upon allegations of litigation-related misconduct. *See, e.g.*, *S.K.M. Restaurants, Inc.*, 2013 WL 6916623, at *7; *Garden Catering-Hamilton Ave., LLC v. Wally's Chicken Coop, LLC*, 2013 WL 656733, at *2 (D. Conn. 2013); *Mangs*, 2010 WL 5573705, at *3–4; *Wes-Garde Components Grp., Inc. v. Carling Techs., Inc.*, 2010 WL 1497553, at *11 (Conn. Super. Ct. 2010); *Gilbert v. Beaver Dam Ass'n of Stratford, Inc.*, 2001 WL 950864, at *4–5 (Conn. Super. Ct. 2001).

This approach is sound. As Judge Arterton recently noted, "[t]he same basic logic applies notwithstanding the difference in the legal elements between a vexatious-litigation tort and a

10

CUTPA claim alleging that purportedly frivolous litigation is itself an unfair trade practice," because "a CUTPA claim founded on litigation must establish that the litigation itself is vexatious or a sham," but "[t]he Court . . . cannot make this determination where the litigation that forms the basis for the CUTPA claim is still pending before the Court." *Garden Catering-Hamilton Ave., LLC*, 2013 WL 656733, at *2. Permitting CUTPA claims premised on the allegation that the pending litigation is improper would "impair the presentation of honest but uncertain causes of action in the courts." *Scinto v. Mariner Health Care, Inc.*, 1993 WL 393834, at *2 (Conn. Super. Ct. 1993). Moreover, allowing such claims could create problems in the attorney-client relationship, "expos[ing counsel's] communications [with the client] to disclosure due to the relevance of such communications . . . to any defense of good-faith reliance upon the advice of counsel which the client might interpose." *Wes-Garde Components Grp., Inc*, 2010 WL 1497553, at *11.

Notwithstanding defendants' arguments to the contrary, the gravamen of their claim is that plaintiff's lawsuit and his litigation-related tactics violate CUTPA. Defendants argue that the prior termination requirement is inapplicable here because their CUTPA counterclaim does not actually use the words "vexatious litigation." Doc. #46 at 7–8. I am not persuaded. The counterclaim alleges that plaintiff's lawsuit is deceptive, unsubstantiated, and improper, and the mere fact that defendants have avoided using a particular phrase does not change the fundamental nature of their allegations. *See Scinto*, 1993 WL 393834, at *2 (Conn. Super. Ct. 1993) ("While the defendants do not label the complaint a vexatious suit, that is the gist of the first count of the counterclaim.").

Defendants also argue that their CUTPA counterclaim is not premature to the extent that it alleges that plaintiff's "threat of litigation" was wrongful. Doc. #46 at 7. This argument might

11

have some merit if the "threat [of litigation] . . . caused the claimant to suffer 'an ascertainable loss of money or property[,]' separate and apart from any loss allegedly resulting from the eventual bringing of the threatened litigation itself." *Wes-Garde Components Grp.*, 2010 WL 1497553, at *11 (quoting Conn. Gen. Stat. § 42-110g). But where, as here, the threats of litigation were "merely part[] of a single course of conduct culminating in [the present] lawsuit," the threat-to-sue claim is treated together with the vexatious/bad faith litigation claim as a "single basis for seeking relief under CUTPA." *Id.* at *12; *see also Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 155–56, 881 A.2d 937 (2005) (offering no separate analysis of threatening to sue and actually bringing suit when alleged together as basis for CUTPA claim).

In short, defendants' CUTPA claim is premature. It may not be asserted until (and unless) this litigation terminates in defendants' favor. I therefore dismiss defendants' CUTPA counterclaim without prejudice to re-filing—if warranted—in a future lawsuit in the event that this litigation terminates in their favor.

## CONCLUSION

Defendants' motion to post a bond is **DENIED**. Plaintiff's motion for leave to file an amended complaint is **DENIED**. Plaintiff's motion for summary judgment on the proposed additional copyright claim is **DENIED AS MOOT**. Plaintiff's motion for summary judgment on defendants' CUTPA counterclaim is construed as a motion to dismiss, and the motion is **GRANTED** and the CUTPA counterclaim is **DISMISSED**.

It is so ordered.

Dated at Bridgeport this 9th day of February 2015.

/s/ Jeffrey Alker Meyer
Jeffrey Alker Meyer
United States District Judge