UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH LEARY,
    *Plaintiff*,

v.                                    No. 3:13-cv-00639 (JAM)

ROY MANSTAN, *et al.*,
    *Defendants*.

**ORDER ON DEFENDANTS' JOINT MOTION FOR ATTORNEY'S FEES AND COSTS**

This is a copyright infringement action brought by plaintiff Joseph Leary against defendants Roy Manstan, Frederic Frese, and Westholme Publishing, LLC. Plaintiff and the individual defendants share an interest in the Revolutionary War-era submarine built by David Bushnell known as the "Turtle." Plaintiff is the copyright owner of an unpublished manuscript about the submarine. Plaintiff brought this action against defendants alleging that a book later written by Manstan and Frese and published by Westholme, LLC infringed upon his copyright of the unpublished manuscript. On July 15, 2015, the Court granted summary judgment in favor of defendants, dismissing plaintiff's claims. Defendants have moved for an award of attorney's fees pursuant to 17 U.S.C. § 505 and for an award of sanctions against plaintiff's counsel pursuant to the Court's inherent power and 28 U.S.C. § 1927. I will grant defendants' motion for attorney's fees and costs, but I will deny their motion for sanctions against plaintiff's counsel.

**BACKGROUND**

The lengthy procedural history of this nearly five-year-old case is set forth more fully in the Court's earlier rulings on the parties' numerous motions filed in this case. *See Leary v. Manstan*, 118 F. Supp. 3d 460 (D. Conn. 2015); *Leary v. Manstan*, 2015 WL 521497 (D. Conn.

2015). The Court presumes the parties' familiarity with the procedural and factual background of the case.

After the Court granted summary judgment in favor of defendants on all of plaintiff's claims, defendants timely filed a motion for attorney's fees and costs and for sanctions against plaintiff's counsel. Doc. #73. On February 7, 2017, I denied defendants' motion without prejudice because defendants did not supply any of the supporting records necessary for the Court to determine a reasonable award. Doc. #99 at 2. Defendants have now timely renewed their motion for attorney's fees and costs under 17 U.S.C. § 505 and sanctions against plaintiff's counsel pursuant to the Court's inherent power and 28 U.S.C. § 1927.

## DISCUSSION

### *Attorney's Fees Pursuant to 17 U.S.C. § 505*

Federal law provides that in a copyright action "the court in its discretion may allow the recovery of full costs by or against any party," and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has observed that the statute "clearly connotes discretion," and does not prescribe any "precise rule or formula for awarding fees." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) (internal quotation marks omitted).

While the statute gives district courts "broad leeway" in rendering fee award decisions, the Supreme Court has noted with approval several nonexclusive factors to inform a fee-shifting decision: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Ibid.* "Of these factors, 'objective reasonableness . . . should be given substantial weight in determining whether an award of attorney['s] fees is warranted' because 'the imposition of a fee award against a

copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act.'" *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014) (quoting *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001)). Nevertheless, in weighing the relevant factors, I must be mindful not to construe "substantial weight" to mean dispositive weight. *See Kirtsaeng*, 136 S. Ct. at 1989. In other words, I must consider all of the relevant factors, beyond simply the reasonableness of a party's litigation position. *Ibid.* In light of these factors, I conclude that an award of attorney's fees and costs is warranted in this case.

First, plaintiff's claims were objectively unreasonable. The mere fact that summary judgment was granted in favor of defendants in this case does not necessarily mean plaintiff's position was objectively unreasonable. *See Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001). An objectively unreasonable claim is one that altogether lacks any legal or factual support. *See Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001). Plaintiff's claim, indeed, lacked any reasonable factual or legal support.

As I noted in my summary judgment ruling, copyright protection for non-fictional narratives is quite "thin." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991). It has long been the rule that "the scope of copyright protection in historical accounts is narrow indeed, embracing no more than the author's original expression of particular facts and theories already in the public domain," and that "absent wholesale usurpation of another's expression, claims of copyright infringement where works of history are at issue are rarely successful." *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 974 (2d Cir. 1980). In this case, there is no dispute that defendants' book did not copy plaintiff's work or even closely

paraphrase any portion of it. There was obviously no "wholesale usurpation" of plaintiff's expression. Plaintiff's claim was almost self-evidently doomed from the start.

The works were dissimilar in a number of other aspects. As I previously observed, "the respective works have obviously differing focuses and approach the material from different angles." *Leary*, 118 F. Supp. 3d at 468. Defendants' work was largely a technical discussion of the design and construction of the "Turtle," with historical information about Bushnell and his era peppered in for context. *Ibid.* Plaintiff's work, on the other hand, was principally a historical narrative. Additionally, defendants' work employed a "markedly" different structure than plaintiff's copyrighted work, serving largely as a technical manual, whereas plaintiff's work was in narrative form. *Id.* at 469. Other claimed similarities between the two works were plainly not protectable—including plaintiff's allegedly original hypothesis about Isaac Doolittle assisting Bushnell in building the "Turtle," the use of the "flash-forward" and "flash-back" narrative device, and recitation of what little historical information is available about Bushnell.

Plaintiff relies on the fact that his expert concluded that plaintiff's work had been copied. But, as I noted in my summary judgment ruling, expert testimony in infringement cases is largely "irrelevant" to the question of whether a copyright has been infringed. *Leary*, 118 F. Supp. 3d at 465 n.5 (quoting *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992)). A copyright claim may be objectively unreasonable and be subject to an award of fees notwithstanding expert testimony that may support the claim. *See, e.g.*, *Muller v. Twentieth Century Fox Film Corp.*, 2011 WL 3678712, at *3 (S.D.N.Y. 2011) (Chin, J.) (awarding fees); *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 443 (S.D.N.Y. 2011) (Chin, J.) (discussing plaintiff's expert testimony), *aff'd sub nom. Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012). Here, plaintiff's expert conceded little knowledge of copyright law, but boasted a professional

understanding of plagiarism. *See* Doc. #41-12 at 35–40. Plagiarism is, of course, distinct from copyright infringement.[1] Accordingly, nothing about the expert's report moves the needle on the objective reasonableness of plaintiff's infringement claim.

Plaintiff next argues that his infringement claim is not objectively unreasonable because his claim tests an unsettled area of copyright law. Plaintiff cites two cases—*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985), and *Wainwright Sec., Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977)—as evidence that the law is unsettled as to what constitutes protectable elements of unpublished copyrighted work. Doc. #110 at 16–17. But these cases were not even cited in plaintiff's opposition memorandum to defendants' summary judgment motion and were cited by plaintiff for the first time at oral argument on the motion. Moreover, these cases pertain to the breadth of the fair use doctrine as applied to unpublished works. Nothing about them suggests that the same principles should be extended to expand the breadth of copyright protection of non-fiction works. I conclude that plaintiff pressed an objectively unreasonable copyright claim.

Plaintiff's motivation for bringing the lawsuit is more difficult to divine. Generally speaking, someone is improperly motivated when the claim is asserted not because of the inherent merit of the claim, but rather because of some ulterior motive. *See Agence Fr. Presse v. Morel*, 2015 WL 13021413, at *5 (S.D.N.Y. 2015). A desire to punish an alleged infringer by bringing a good-faith infringement action is a reasonable basis for bringing an infringement action. *See Blanch v. Koons*, 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007). Indeed, there is record

---

[1] "Plagiarism, which many people commonly think has to do with copyright, is not in fact a legal doctrine. True plagiarism is an ethical, not a legal offense and is enforceable by academic authorities, not courts. Plagiarism occurs when someone—a hurried student, a neglectful professor, an unscrupulous writer—falsely claims someone else's words, whether copyrighted or not, as his own." *Kindergartners Count, Inc. v. DeMoulin*, 249 F. Supp. 2d 1233, 1251–52 (D. Kan. 2003) (quoting *Black's Law Dictionary* 1170 (7th ed. 1999)).

evidence to suggest this is what motivated plaintiff. *See, e.g.*, Doc. #41-11 at 120–21 (stating that he was "furiously pissed off" after reading defendants' book, which he "perceived to be my book without my name on the cover"); *id.* at 124 (stating "I don't know what the law holds" but "lots of [plaintiff's manuscript] ended up in [defendants'] book without my knowledge or permission").

But there is also evidence in the record that plaintiff was motivated as well by anger about having been removed from the Turtle replica project. *See e.g.*, Doc. #41-11 at 75 ("I mean, these people took the project away from me, and I never received compensation or notification or anything."); *id.* at 91-92 (responding "I still want to get paid" in response to a question about funding the replica project); *id.* at 298 ("That's not what we are here for. This is about those people stealing my project from me and then, in my opinion, publishing my work").

It became clear at oral argument that plaintiff's exclusion from the replica project still angers plaintiff. Plaintiff described at the hearing what he termed the unaddressed "intellectual property aspect" of this case. Doc. #125 at 49. He explained that the real issue was that defendants Manstan and Frese had acquired plaintiff's 1977 rendition of the replica "Turtle" when they acquired a copy of his manuscript and then based their own rendition of the "Turtle" on plaintiff's rendition rather than the Bushnell original. *Ibid.* Plaintiff complained that defendants "built a copy of my submarine and they wrote my name out of it." *Ibid.* He emphasized that the two replicas "pictorially they look so incredibly similar." *Id.* at 51. Plaintiff also cryptically alluded to what "Old Saybrook High School [where the replica was built] did to me and what has happened since then." *Ibid.*

On balance, I conclude that plaintiff's principal motivation in pursuing this infringement action was to exact revenge on Manstan and Frese for his removal from the later "Turtle" project

6

that Manstan and Frese completed. My conclusion is further supported by evidence of settlement negotiations that plaintiff chose to submit in opposition to this motion. Plaintiff requested, in addition to money, that defendants insert an acknowledgement into each unsold copy of their book. Doc. #85 at 2. The acknowledgement comprises three sentences: only one sentence recites that defendants "based major portions of their book on [plaintiff's] writing without his consent," while the remaining two sentences recite that plaintiff was kicked off the "Turtle" project and that the project was unsuccessful. *Ibid.* Accordingly, I conclude that plaintiff advanced his copyright claim largely for reasons that had nothing to do with protecting his rights in the manuscript that he wrote (rather than his interest in having been part of the replica project).

Next, I conclude that an award of attorney's fees advances considerations of compensation and deterrence. It is obvious that defendants have suffered financially to defend a meritless case litigated over a work that generated relatively little revenue for defendants. Manstan and Frese realized only $3,000 in compensation for publishing their book. Doc. #109 at 16. Yet, to defend against this spite suit, Manstan and Frese have incurred more than $80,000 in legal fees. Doc. #109-5 at 3. Defendants should be compensated for having to defend against this objectively unreasonable claim. In addition, people who have shared experiences with other people that might become the subject matter of an interesting non-fiction work should not have to fear that a disgruntled or jilted erstwhile colleague or associate will pursue a meritless copyright claim as a form of revenge.

Lastly, I turn to whether plaintiff's claim was frivolous. Although the frivolousness factor is separate and distinct from the objective unreasonableness factor, "[t]he line separating them is not, however, well-defined," and frivolousness may amount to "a particularly intense form of objective unreasonableness." *TCA Television Corp. v. McCollum*, 2017 WL 2418751, at *14

(S.D.N.Y. 2017). While I have no doubt that plaintiff's claim was objectively unreasonable, I am reluctant to conclude that his claim was no less than frivolous. I need not make such a finding in order to award attorney's fees and costs. *See Zamoyski v. Fifty–Six Hope Road Music Ltd., Inc.*, 767 F. Supp. 2d 218, 224-25 (D. Mass. 2011). Even if plaintiff's claim was not frivolous, I conclude that an award of attorney's fees and costs is appropriate in this case.

### *Attorney Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Power*

In a copyright action, a court may hold a party and his counsel jointly and severally liable for attorney's fees and costs if such is an award is made under both 17 U.S.C. § 505 and 28 U.S.C. § 1927. *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 264 (2d Cir. 2015). Under 28 U.S.C. § 1927, a court may impose sanctions on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." A court may also impose sanctions pursuant to its inherent power. A sanction under § 1927 may only be imposed against an attorney, while the Court may invoke its inherent authority to sanction an attorney as well as a party. *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999). The standard for sanctions under either authority is for all practical purposes the same. *See Baker*, 431 F. Supp. 2d at 363 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).

The Second Circuit has described the task of awarding sanctions as "one of the most difficult and unenviable tasks for a court." *Schlaifer Nance & Co., Inc*., 194 F.3d at 337. In order to impose sanctions against an attorney, the court must find that the challenged claim lacked a colorable basis and that the claim was brought in bad faith. *Id.* at 336. In determining whether to award sanctions under § 1927, the questions is whether the "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for

some improper purpose." *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125–26 (2d Cir. 2011).

I conclude that the heightened standard of bad faith on the part of plaintiff's attorneys has not been satisfied in this case. While I do find that plaintiff himself brought this action, in principal part, with an improper motive, the record does not show that plaintiff's counsel shared this same motive. It is true that bad faith on the part of an attorney, as would support an award of costs and fees under § 1927, may be inferred when actions "are so completely without merit as to *require* the conclusion that they must have been undertaken for some improper purpose such as delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). As far as I can tell, plaintiff's counsel believed plaintiff's lay conclusion that his manuscript had been copied and then filed this action without performing the necessary factual and legal research before proceeding with the infringement claim. This was obvious incompetence but not necessarily bad faith.

Plaintiff's counsel's lack of familiarity with his own case is evident from the record. Plaintiff's counsel exchanged letters with defense counsel regarding the plaintiff's cease and desist demand prior to filing a federal court complaint. In a letter dated April 8, 2013, plaintiff's counsel stated to defense counsel that there were substantial similarities between the two works, "including the copying of obscure footnotes and even errors found in the copyrighted manuscript that were subsequently corrected." Doc. #46-3 at 7. The allegation of a copied error was withdrawn, Doc. #41-11 at 148–49, and no evidence of copying obscure footnotes was ever produced. I queried plaintiff's counsel on this point at oral argument and he represented that "the understanding certainly changed" during "the course of a couple years of discovery" since the case commenced. Doc. #125 at 39. It is far from clear to me how counsel's understanding of the

central issue—substantial similarity—could evolve over time; counsel had the opportunity—in fact, the duty—to investigate at the start whether plaintiff had a genuine claim of substantial similarity by reviewing the works, which he had available before the litigation began.

According to plaintiff's counsel, "it's as simple as Mr. Frese [defendant] had a copy of the book and was a co-author and there's similarities of content." *Id.* at 40. But in an infringement action, the matter is not as simple as access and similarity of content; it is whether protected expression was usurped. *See Zalewski*, 754 F.3d at 102. Counsel's failure to appreciate this does not, however, bespeak bad faith. It is simply incompetence. Plaintiff was ill-served by counsel who effectively enabled his vendetta to press a meritless lawsuit for petty and spiteful reasons.[2]

I do not agree with defendants that plaintiff's counsel's conduct in this litigation demonstrated a purpose to delay or harass. First, with respect to plaintiff's motion to amend to add a claim for copyright infringement of a photograph, I acknowledge that I denied his motion to amend because plaintiff was not diligent in raising this claim in light of the facts that were known or should have been known "well before the commencement of the suit." *Leary*, 2015 WL 521497, at *4. But I have no reason to question plaintiff's counsel's sworn affidavit that states he was unaware that plaintiff owned the photograph before October 2013. Doc. # 110-1 at 2 (¶¶ 10–11).

Nor does the fact that plaintiff moved for summary judgment on the new claim before the Court ruled on the motion to amend suggest plaintiff's counsel was vexatiously multiplying the proceedings. The fact that the motion was filed on the eve of the deadline for dispositive motions

---

[2] Plaintiff's counsel's reliance on the expert testimony of an English professor emphasizes this point. While her opinion would be relevant to an inquiry of academic integrity, the expert lacked the expertise to discern whether the two works were substantially similar for purposes of the Copyright Act. This, too, counsel should have been well aware of and avoided if counsel were minimally competent about the litigation of a copyright action.

10

implies an attempt to comply with the Court's scheduling order. In fact, the Court scheduled oral argument on the motion despite the fact that the motion pertained to a count not yet part of the operative complaint. Doc. #59.

With respect to the motion hearing set for January 20, 2015, plaintiff is correct that the original electronic notice sent on December 5, 2014, did not state that argument would be heard on defendants' motion for summary judgment, though the notice was updated on December 8 to include defendants' motion. *Ibid.* Next, I find nothing improper in the development of plaintiff's expert's report, contrary to defendants' allegation. Finally, plaintiff's counsel's citation of cases for the first time at oral argument bespeaks counsel's lack of prior due diligence rather than bad faith.

Unfortunately, in view of the varying standards for an award under 17 U.S.C. § 505 and 28 U.S.C. § 1927, because plaintiff's counsel from the law firm of St. Onge, Steward, Johnston & Reens was merely incompetent but did not act in bad faith, plaintiff is left holding the bag for attorney's fees and costs. Plaintiff sought out counsel in an effort to vindicate rights he believed he enjoyed under the law. Plaintiff thought he was getting legal counsel, but instead he is saddled with a monetary liability. Because his counsel did not act in bad faith, I cannot provide relief by, for example, ordering plaintiff's counsel to pay the fee award. But, as plaintiff's counsel observed at oral argument, plaintiff may have "other avenues available" such as a malpractice claim in state court to share the financial burden for blindly leading him down this road in the litigation of an objectively unreasonable claim. Doc. #125 at 45. Accordingly, I will deny defendants' motion for sanctions against plaintiff's counsel.

*Attorney's Fees and Costs*

An award of attorney's fees under 17 U.S.C. § 505 "must be reasonable in terms of the circumstances of the particular case." *Mathew Bender & Co.*, 240 F.3d at 121. The lodestar method is the appropriate method for determining an award of attorney's fees pursuant 17 U.S.C. § 505. *See Vargas v. Pfizer, Inc.*, 352 F. App'x 458, 460 (2d Cir. 2009). Under the lodestar method, a fee award is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Baker*, 431 F. Supp. 2d at 360. Additionally, the Court may consider the financial resources of the party from whom a fee award is sought in fixing an award. *See Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 132 (S.D.N.Y. 2008).

Defendants Manstan and Frese have incurred $88,710 in fees and costs to the law firm Brown, Paindiris, & Scott, LLP (BPS). Plaintiff does not challenge the hourly rates charged by Attorney Van Gootkin ($225 per hour in 2013, $250 in 2014-17, and $275 in 2017), Attorney Rintoul ($325 per hour), Attorney Weber ($100 per hour), paralegals ($95 per hour), and law clerks ($90 per hour). I conclude that a reasonable rate is $225 per hour for Attorney Van Gootkin, $325 per hour for Attorney Rintoul, $100 per hour for Attorney Weber, $95 per hour for paralegal work, and $90 per hour for law clerk work. On this case, Attorney Von Gootkin worked 262.6 hours; Attorney Rintoul worked 1 hour; Attorney Weber worked 3.7 hours; paralegals worked 54.05 hours; and law clerks worked 40.85 hours.

I also conclude that some of the hours billed by defense counsel were unreasonable. First, I will exclude time spent related to defendants' counterclaims and their motion for bond. Therefore, I will reduce the number of hours for Attorney Van Gootkin by 17.6 hours, the number of hours for law clerks by 0.3 hours, and the number of paralegal hours by 0.8. Because

the first motion for attorney's fees and costs was denied without prejudice for failure to include billing records, I will reduce the total number of hours expended on the motion and renewed motion by half. Therefore, I will make an additional reduction in total hours for Attorney von Gootkin of 23.8 hours, for clerks of 3.15 hours, and for paralegal work of 8.25 hours.[3]

After these reductions, defendants are entitled to a fee award based on 221.2 hours of work by Attorney Von Gootkin, 37.4 hours of work by law clerks, 45 hours of hours of paralegal work, leaving the number of hours worked by Attorneys Weber and Rintoul unchanged. This results in a fee award of $49,770 for the work of Attorney von Gootkin, $3,366 for the work of law clerks, $4,275 for the work of paralegals, $325 for the work of Attorney Rintoul, and $370 for Attorney Weber. This results in a total attorney's fee award for work performed by BPS of $58,106.

Defendants also seek an award of $17,337 in costs expended by BPS litigating this case. Plaintiff argues that defendants are not entitled to an award of costs that include the cost of legal research fees. Plaintiff is correct; legal research fees are not taxable as costs. D. Conn. L. Civ. R. 53(c)7(xi). Accordingly, I will reduce the cost award by $3,508.11. I will also reduce the cost award by $51.95, the total amount expended on fees to the Marshal because defendants failed to furnish the required supporting documentation. *See* D. Conn. L. Civ. R. 53(c)1. The total award for costs expended by BPS is $13,776.94. Therefore the total costs and attorney's fees award for work performed by BPS is $71,882.94.

---

[3] Plaintiff also argues that Manstan and Frese are not entitled to attorney's fees for any time spent seeking attorney's fees because counsel for Westholme Publishing did not bill for time spent seeking attorney's fees. I disagree. Prevailing parties are entitled to seek attorney's fees for the fee application. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 428 (2d Cir. 1999). And the grace of counsel for one defendant does not bear upon the reasonableness of a co-defendant's counsel's billing practices.

The law firm Bakos & Kritzer represented Westholme Publishing, Inc. Attorney Kritzer, a name partner of the firm, billed at $495 per hour. Attorney McPhee is an associate at the firm with 14 years of experience who billed at $225 per hour. Plaintiff has not challenged the reasonableness of these hourly rates. I conclude that Attorney McPhee's hourly rate is reasonable. But, as to Attorney Kritzner, the record does not reveal his experience. I conclude that a rate of $325 is reasonable.

Attorney Kritzner billed a total of 226.9 hours.[4] Attorney McPhee billed a total of 111.6 hours. I will deduct the total hours spent by each attorney on the motion for bond and litigating defendants' counterclaims. I will deduct 19.45 hours for Attorney Kritzner for a total of 207.45, and 12.9 hours for Attorney McPhee for a total of 98.7 hours. Multiplying the reasonable hours worked by the reasonable hourly rate for each attorney yields a total fee award of $67,421.25 for work performed by Attorney Kritzner and $22,207.50 for work performed by Attorney McPhee. Plaintiff does not contest the costs of $1,004.34 billed by the Bakos & Kritzer law firm. In sum, defendants are entitled to a reasonable costs and fee award of $90,633.09 for the work performed by the Bakos & Kritzer law firm.

This amounts to a total award of $162,516.03.[5] Plaintiff argues that he cannot afford to pay a substantial fee award in this case because he collects only a social security retirement check each month and owns nothing in assets greater than his Hyundai car valued at $5,000. Doc. #110 at 19–20; Doc. #121. On the other hand, plaintiff may well have avenues for relief

---

[4] This sum does not include the total number hours documented in the timesheet that were billed at no charge.

[5] I acknowledge that plaintiff, in addition to his infringement claim, advanced a claim under the Connecticut Unfair Trade Practices Act (CUTPA). Ordinarily, a reduction in the overall award to account for time spent on non-copyright claims is appropriate. *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996). Defendants moved for summary judgment on plaintiff's CUTPA claim on the ground that, absent a violation of the Copyright Act, plaintiff's CUTPA claim fails, dedicating all of three sentences to their argument. Because it is clear that any time spent defending against plaintiff's CUTPA claim was *de minimis*, I decline to discount the award for time spent on the claim.

against his counsel from the law firm of St. Onge, Steward, Johnston & Reens because of their basic incompetence in deciding to pursue this copyright action. After considering plaintiff's age and lack of resources as well as the possibility that his incompetent counsel may stonewall efforts he might make to have them share the cost burden, I conclude that it would be inequitable to impose the entire large award against plaintiff. *See, e.g.*, *Vargas v. Transeau*, 2008 WL 3164586, at *4 (S.D.N.Y. 2008) (reducing fee award by almost 78 percent in light of plaintiff's meager income), *aff'd sub nom. Vargas v. Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009). Here, "a lesser sum assessed would [fulfill] the statute's deterrent purpose without subjecting [plaintiff] to financial ruin." *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028-29 (2d Cir. 1979). Therefore, I will reduce the fee award by one-third to a total of $108,344.02.

## CONCLUSION

Defendants' Joint Motion for Attorney's Fees and Costs (Doc. #109) is GRANTED in part and DENIED in part. Defendants' motion is DENIED to the extent it seeks sanctions against plaintiff's counsel. The motion is GRANTED to the extent it seeks a costs and fees award pursuant to 17 U.S.C. § 505. Defendants are awarded $108,344.02 in costs and fees.

It is so ordered.

Dated at New Haven this 27th day of March 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge